Rhoda TANG, Plaintiff, Appellant,

v.

STATE OF RHODE ISLAND, DEPART-
MENT OF ELDERLY AFFAIRS and
Maureen Maigret and Susan Sweet, in
Their Individual and Official Capacities,
Defendants, Appellees.

Nos. 98–1256, 98–1668.

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1998.

Decided Dec. 9, 1998.

Dennis J. Roberts, II, with whom Gabriella G. Gaal, was on brief for appellant.

Rebecca Tedford Partington, Assistant Attorney General, for appellees.

Before BOUDIN, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Plaintiff-appellant Rhoda Tang ("Tang"), an Asian–American employee of the Rhode Island Department of Elderly Affairs ("Department"), filed a complaint against the Department[1] alleging racial and gender discrimination, harassment and retaliation. During the course of litigation, the district court excluded certain evidence, granted judgment as a matter of law for the Department, and granted attorney's fees to the Department. Tang appeals each of these decisions. Because she has failed to show that the district court's rulings on evidence and judgment as a matter of law were erroneous, we affirm. We, however, remand the attorney's fee decision for clarification.

## I. *Background*

During the decade preceding this litigation, Tang, individually and in her role as president of the local union, filed a series of grievances against the Department. One such grievance, filed in 1989 after the Department discharged her, went to an arbitration hearing in May 1991. During that hearing, the parties agreed to settle the grievance by reinstating Tang and had the stipulated settlement entered as the arbitrator's award.

Several years later, Tang filed another grievance, this time claiming racial and gender discrimination as well as retaliation for actions occurring before the 1991 hearing date. The Department moved to dismiss the complaint based on the res judicata effect of the stipulated arbitration award. Judge Pet-

tine found that he could not decide the issue on the basis of the record at the time, and consequently denied the motion. During the course of that opinion, the court noted that at a recent conference the parties had discussed the admissibility of evidence underlying the 1989 grievance. Although the parties had not briefed the evidentiary issue, Judge Pettine stated that "evidence of [Tang's 1989] discharge will be admissible at trial" whether or not Tang's claim could be based on the earlier termination.

Defendants subsequently filed an interlocutory appeal on grounds not relevant here. By the time the action was remanded to the district court, Judge Pettine had retired, and the case had been assigned to Judge Torres.

Based on the statement in Judge Pettine's opinion, Tang sought to introduce evidence underlying her 1989 discharge at trial. Judge Torres found that the existence of the grievance was relevant to Tang's retaliation claim, but the facts underlying it were not because it had been resolved. Judge Torres therefore ruled that Tang could introduce the fact that she had filed a grievance but not the details of it.

After the close of the plaintiff's case, Judge Torres granted judgment as a matter of law in favor of the Department. He ruled that Tang had presented no evidence that would support her claims, and, in fact, the evidence contradicted her allegations.

The Department then filed a motion for attorney's fees under 42 U.S.C. § 1988. Reiterating that the complaint was based on "a number of minor perceived slights" and that there was "absolutely no evidence" that the slights were race or gender-based, Judge Torres granted the Department's motion for fees.

## II. *Discussion*

### A. *Admission of Pre–1991 Evidence*

Tang claims that Judge Torres erred in excluding the pre–1991 evidence because Judge Pettine's ruling that the evi-

1. The complaint named three defendants: the Department, Maureen Maigret and Susan Sweet, who are the Director and Associate Director of

the Department, respectively. Because there is no need to distinguish between the defendants, we will refer to all three as the Department.

dence would be admissible was the law of the case. Whether the law of the case doctrine bars subsequent litigation of a claim is an issue of law subject to plenary review by this court. *See Dopp v. Pritzker*, 38 F.3d 1239, 1245 (1st Cir.1994).

 Tang's reliance on the law of the case doctrine is misplaced. As we recently said, that doctrine both prevents a party from relitigating an issue decided by a lower court and unchallenged on appeal, and requires a lower court to comply with a superior court's instructions on remand. *See Field v. Mans*, 157 F.3d 35, 40–41 (1st Cir.1998). The doctrine does not preclude all reconsideration of an issue already settled. *See Bethlehem Steel Export Corp. v. Redondo Constr. Corp.*, 140 F.3d 319, 321 (1st Cir.1998). "Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case." *Perez–Ruiz v. Crespo–Guillen*, 25 F.3d 40, 42 (1st Cir.1994).

 At the time of Judge Pettine's comments, the parties had not briefed whether the evidence was admissible; the Department had made a motion to dismiss the complaint. Even if Judge Pettine's comments constituted a ruling on admissibility, that ruling was interlocutory and subject to reconsideration. The fact that the issue was reconsidered by Judge Torres, rather than Judge Pettine, is of no moment. *See United States v. O'Keefe*, 128 F.3d 885, 891 (5th Cir.1997) ("[A] successor judge has the same discretion to reconsider an order as would the first judge."). The law of the case is simply not implicated in Judge Torres's ruling on the admissibility of evidence.[2]

### B. *Judgment as a Matter of Law*

 Tang also alleges that the district court erroneously granted judgment as a matter of law in favor of the Department on her First Amendment freedom of speech claim.[3] We review the district court's decision *de novo*, taking the facts in the light most favorable to Tang. *See Russo v. Baxter Healthcare Corp.*, 140 F.3d 6, 7–8 (1st Cir. 1998). We may affirm the judgment only if there "is no legally sufficient evidentiary basis for a reasonable jury to find for [her]." Fed.R.Civ.P. 50(a). Tang must provide "more than a mere scintilla of evidence and may not rely on conjecture or speculation to justify the submission of an issue to the jury." *Russo*, 140 F.3d at 7–8 (internal quotation marks omitted).

Tang claims the Department violated her First Amendment free speech rights by retaliating against her for filing union grievances, both on her own behalf and in her role as president of the union.[4]

 The First Amendment guarantees every citizen the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. Tang does not lose this right because she has been employed by the government. *See Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Nevertheless, absolute First Amendment protection is not accorded to any grievance a public employee files against an employer, without regard to content. If it did, anything she said in the Department "would

---

2. We note that Tang failed to argue that, even if not barred by the law of the case, the decision constituted an abuse of discretion. Because it was neither argued nor briefed, such a claim has been waived. *See Rivera–Rosario v. United States Dept. of Agriculture*, 151 F.3d 34, 37 (1st Cir. 1998).

3. Tang does not appeal the district court's decision to grant judgment as a matter of law on her racial or gender discrimination and harassment claims.

4. Although Tang makes passing reference to the freedom of association, her appeal is explicitly based on her freedom of speech claim. *See* Brief of Appellant, p. 2, Statement of Issues on Appeal (appealing the decision regarding her "First Amendment right of freedom of speech"). Because a freedom of association claim is not before us, we see no reason to address the disagreement among our sister circuits regarding whether the *Connick* test for freedom of speech claims, discussed *infra*, applies to. freedom of association claims as well. *See Marshall v. Allen*, 984 F.2d 787, 798 (7th Cir.1993) (applying *Connick* to freedom of association claims); *but see Hatcher v. Board of Pub. Educ. & Orphanage*, 809 F.2d 1546, 1558 (11th Cir.1987) (finding that *Connick* does not apply to freedom of association claims).

plant the seed of a constitutional case." *Id.* at 149, 103 S.Ct. 1684.

 Instead, we employ a three part test to determine whether Tang has an actionable First Amendment freedom of speech claim. First, the court must determine whether Tang made her statements "as a citizen upon matters of public concern." *Id.* at 147, 103 S.Ct. 1684. If the speech involved matters not of public concern, "but instead ... of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* Second, the court must weigh the strength of the employee's and the public's First Amendment interests against the government's interest in the efficient performance of the workplace. *See Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Third, if the employee's and the public's First Amendment interests outweigh a legitimate governmental interest in curbing the employee's speech, Tang must show that the protected expression was a substantial or motivating factor in an adverse employment action. *See O'Connor v. Steeves*, 994 F.2d 905, 913 (1st Cir.1993).

 Tang's claims fail at the first step because she has not demonstrated that her speech involved any public interest. In assessing whether Tang's speech implicates public concerns, we analyze "the content, form, and context of [the speech], as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. 1684.

Having done so, we agree with the district court that Tang has failed to develop a viable First Amendment claim. Tang's brief on appeal notes that she filed many grievances regarding employment practices, but fails to provide any explicit description of their content, form, or context. Nor does a review of the record below shed any further light on

the nature and circumstances of the several dozen grievances Tang filed.

The record, at best, permits speculation that the grievances underlying her First Amendment claim were similar to the six alleged acts of harassment and retaliation, none of which, individually or together, involved public concerns.[5] The first such act occurred on March 4, 1994, when Tang was informed that her position was to be abolished due to budget cuts. She was placed on administrative leave with pay, and informed that she had the right to "bump" another union employee with less seniority. Several days later, the government realized that Tang's position could not be abolished, rescinded the March 4 notice, and reinstated Tang to her previous position. In essence, then, Tang's first complaint involves the fact that she was erroneously placed on administrative leave with pay for a few days. The second instance involved relocating her workspace from the third floor to the first floor, and sometime later to the second. Third, she complained that a filing cabinet was moved to a different floor from her workspace and placed alongside other filing cabinets. Fourth, she alleges that she was instructed to take her phone calls at her own desk, not elsewhere in the department. Fifth, she claims she was harassed and retaliated against when her coworker repeatedly asked her when she would no longer need a computer they shared. Finally, the sixth alleged act of harassment and retaliation involved the placement of a photocopier near the shared computer.

 None of these matters constitutes an issue of public concern; they are all individual personal complaints about working conditions. The Department retains the power to fashion an appropriate response to these issues in the workplace. "[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick*, 461

---

5. During the course of direct examination, Tang mentioned that she was shifted to a different division of the Department, but she admits that she "perform[ed] the same duties as she had prior" to the move. (Amended Complaint, ¶ 36). Since she admittedly has the same job responsibilities and is still an employee of the Department, we interpret the comment about being transferred to a new division as factual background, not as an allegation of harassment or retaliation.

U.S. at 149, 103 S.Ct. 1684. The district court appropriately granted judgment as a matter of law on Tang's First Amendment claim.

## C. Attorney's Fees

■ Title VII and § 1988 provide the court with the power to award attorney's fees to prevailing parties in employment discrimination and civil rights actions, respectively. *See* 42 U.S.C. § 2000e–5(k); 42 U.S.C. § 1988. Although courts are most often faced with motions for attorney's fees by prevailing plaintiffs, the statutes empower courts to grant fee requests by whichever party prevails. While decisions to grant defendants their fees are, and should be, rare, "a district court may in its discretion award attorney's fees to a prevailing defendant ... upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).[6] In determining whether this standard has been met, the court must assess the claim at the time the complaint was filed, and must avoid the post-hoc reasoning that, because the plaintiff did not ultimately prevail, the claim must have been frivolous, unreasonable or without foundation. *See Andrade v. Jamestown Hous. Auth.,* 82 F.3d 1179, 1192 (1st Cir.1996) (citing *Christiansburg,* 434 U.S. at 421–22, 98 S.Ct. 694).

■ After considerable deliberation, the district court reluctantly granted the Department's motion for attorney's fees on the ground that the action was frivolous.[7] We review its decision for abuse of discretion. *See Casa Marie Hogar Geriatrico, Inc. v. Rivera–Santos,* 38 F.3d 615, 618 (1st Cir. 1994). Under this standard, we may not simply substitute our judgment for that of the district court; we will reverse only if we

are left with "a definite and firm conviction that the court below committed a clear error of judgment." *Schubert v. Nissan Motor Corp. in U.S.A.,* 148 F.3d 25, 30 (1st Cir. 1998).

■ Our review of the trial transcript and other record materials persuades us that the district court's finding that the action was frivolous was defensible. As the court correctly concluded, there were two hurdles Tang was unable to surmount, namely an actual injury, and causation between that injury and race, gender or retaliation. Our discussion above demonstrates that Tang's supposed injury amounts to no more than personal displeasure with minor changes or inconveniences in her working situation. Individually and collectively, any allegation that Tang was injured by these incidents, much less suffered the adverse employment action required for Title VII liability, is frivolous, unreasonable and groundless.

Similarly, there was no evidence that any of the alleged actions were based on her race or gender or were done in retaliation for filing union grievances. For instance, when her position was mistakenly abolished, three other employees' positions also were eliminated. Two were white males and one was a white female. Similarly, a number of the incidents involved interactions with other union employees. A claim that other union employees retaliated against Tang for her filing grievances on behalf of the union is transparently meritless.

■ Rather than focusing on the strength of her claims, Tang argues that she should be insulated from paying the Department's attorney's fees for two reasons: 1) she relied on her lawyer to determine how to pursue the claim; and 2) on an earlier occasion she had received a letter from the Rhode Island Commission for Human Rights ("RICHR") suggesting "probable cause" to

---

6. *Christiansburg* involved a fee award in a Title VII case, but the Supreme Court has subsequently held that the same standard applies to § 1988 fee requests by prevailing defendants. *See Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980).

7. Tang challenges the finding that her claim was frivolous. She does not object to either the proposed hourly rate or the time spent by the Department defending the claim. While we note that the award was significant, namely $63,-183.00, the question as argued is not whether that amount was excessive, but rather whether any attorney's fees were warranted at all.

find discrimination had occurred.[8] Neither of these arguments undermines the district court's decision. As a sister circuit has succinctly stated:

> The proper test for [an attorney's fee award to a defendant] is whether the claim itself is clearly meritless. . . . [I]f a claim is groundless, the mere fact that the plaintiff relies on his attorney's erroneous contrary advice does not relieve him of liability.

*Davidson v. Keenan,* 740 F.2d 129, 133 (2d Cir.1984). Whether or not Tang's reliance on· her attorney's judgment was misplaced, she is legally responsible for the filing of the action. *See Prate v. Freedman,* 583 F.2d 42, 48 (2d Cir.1978). *See also Baker v. Alderman,* 158 F.3d 516, 526–27 (11th Cir.1998) ("In deciding whether to assess attorney's fees against a Title VII plaintiff, a court should not consider the plaintiff's counsel's role in filing or maintenance of a frivolous, groundless, or unreasonable claim, or the plaintiff's apparent lack of personal fault.").[9]

▮ Tang also relies on the fact that on an earlier occasion she received a letter from the RICHR finding "probable cause" to believe discrimination had occurred. However, that letter involved the 1989 discharge, and Tang's· own complaint admitted that, as a result of the 1991 stipulated arbitration award, she voluntarily withdrew her charge of discrimination regarding that discharge. The fact that the RICHR had found probable cause in a charge she subsequently agreed to withdraw is irrelevant to determining whether the current action was frivolous, unreasonable, or without foundation.

▮ In essence, Tang's argument is that she filed the claim in good faith. Although finding bad faith makes a fee award to the defendant more likely, it is not a prerequisite. *See Local 285, Service Employees Int'l Union v. Nonotuck Resource Assoc., Inc.,* 64 F.3d 735, 737 (1st Cir.1995). Nor is good faith a defense to such a claim. *See Independent Federation of Flight Attendants v. Zipes,* 491 U.S. 754, 759, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989) ("the prevailing defendant could be awarded fees . . . against the plaintiff whose suit was brought in good faith, but only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.' ").

Although we have found that the district court's determination that the action was frivolous is supported, our inquiry is not over. The transcript of the argument on the attorney's fee motion indicates that the district court was troubled with the prospect of awarding defendants their fees, and found the decision to do so "distasteful." Nevertheless, the court said the defendants were "entitled" to attorney's fees because the action was frivolous.

▮ Because the district court quoted the same language in a prior similar case, *see Pontarelli v. Stone,* 781 F.Supp. 114, 126 (D.R.I.1992), we believe that the term "entitled" comes from our own opinion in *Cloutier v. Town of Epping,* 714 F.2d 1184, 1193 (1st Cir.1983), in which we said "[d]efendants are *entitled* to attorneys' fees under section 1988 only when a court finds that the plaintiff's claim was frivolous, unreasonable, or groundless." (internal quotations omitted and em-

---

**8.** Although Tang also mentions her receipt of a "right to sue" letter from the EEOC, this letter is irrelevant to the district court's finding that the action was groundless and unreasonable. In a Title VII case, receipt of a right to sue letter is a requirement that must be satisfied before a plaintiff may bring suit. *See McKinnon v. Kwong Wah Restaurant,* 83 F.3d 498, 504 (1st Cir.1996). Such a letter cannot protect Tang from any claim by the Department for fees. If it could, courts would be foreclosed from granting defendants' motions for attorney's fees in Title VII cases, and the law is otherwise.

**9.** We note that our decision does not necessarily render the plaintiff lawyer's advice irrelevant.

We hold only that the plaintiff's reliance on a lawyer's advice is not a complete defense to attorney's fees claims by defendants. In exercising its discretion, a district court might decline to award attorney's fees if a plaintiff had a strong factual case and suffered obvious injustice, but relied on a lawyer who pursued an unsuccessful legal theory. *See Silva v. Witschen,* 1992 WL 809159 (D.R.I. Nov. 5, 1992) (declining to award defendants their attorney's fees because plaintiffs had reasonable circumstantial evidence of civil rights violation but attorney failed to inform them that the case was legally flawed and their chances of winning miniscule).

phasis added). The word "entitle" embraces both the acknowledgment of a right and the affording of a basis for making a claim. *See Random House Dictionary* 649 (2d ed. unabridged 1987). *See also Webster's Third New International Dictionary* 758 (1981) ("to give a right or legal title to" and "furnish with proper grounds for seeking or claiming something"). The latter meaning is the pertinent one here. In using "entitled," we did not intend to require district courts to grant fee requests once frivolity has been established. Rather, we intended to state that the finding of frivolity was a necessary prerequisite. Notwithstanding such a finding, the district court still retains discretion to deny or reduce fee requests after considering all the nuances of a particular case. *See Andrade*, 82 F.3d at 1193 (having "calculated the lodestar for a prevailing defendant, the district court may deny or reduce that amount after considering the plaintiff's financial condition.").

It is not clear to us whether the district court recognized its continued discretion. The transcript of the attorney's fee motion hearing contains a number of ambiguous comments by both parties and the court that could be interpreted to the contrary. The Department argued that the issue was an "all or nothing proposition"; the court could award the specific amount requested, or nothing at all. Tang's attorney parroted the Department's standard, and did not highlight the district court's wide discretion even if the action were frivolous. In granting the Department's fee request, the court noted it was troubled by the fact that it was "required to pass on a request for attorney's fees by a large institution such as a state, and the plaintiff is, as usually is the case, just a working person." In going on to describe its duty the court said that the task was simple: to determine whether the action was frivolous.

 Although the record permits the decision made by the district court, we are not sure whether the court actually exercised its discretion in so ruling. The fact that it said the defendants were "entitled" to the award, as "distasteful" as it might have been, suggests that the court believed no discretion

was permitted. Because the court had a wide range of options available, we remand to ensure that the court has the opportunity to utilize its discretion fully. We leave to the district court's discretion as well what steps to take in issuing a new judgment, noting only the Supreme Court's warning that attorney's fee motions "should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

*Accordingly, the judgment of the district court is affirmed in part, vacated in part, and remanded for further action consistent with this opinion. Appellee may receive half its costs.*