Amilcar Guilloty PEREZ, Plaintiff,

v.

Jose Fuentes AGOSTINI,
et al., Defendants.

No. Civ. 97–1264(HL).

United States District Court,
D. Puerto Rico.

Jan. 21, 1999.

Irma R. Valldejuli–Perez, San Juan, PR, Mariangela Tirado–Vales, Hato Rey, PR, for Amilcar Guilloty–Perez, plaintiff.

Luis F. Del–Valle–Emmanuelli, Department of Justiceo Puerto Rico, Federal Litigation Division, San Juan, PR, Roberto Marquez–Sanchez, Law Offices Benjamin Acosta Jr., San Juan, PR, Maria Judith Surillo, Commonwealth Department of Justice, Federal Litigation Division, San Juan, PR, for Jose A. Fuentes–Agostini, defendant.

Luis F. Del–Valle–Emmanuelli, Dept. of Justiceo Puerto Rico, San Juan, PR, Roberto Marquez–Sanchez, Law Offices of Benjamin Acosta, Jr., San Juan, PR, for Pedro J. Pierluisi, Lydia Morales, defendants.

Luis F. Del–Valle–Emmanuelli, Dept. of Justiceo Puerto Rico, Fed. Litigation Div., San Juan, PR, Pedro Soto–Rios, San Juan, PR, Maria Judith Surillo, Commonwealth Dept. of Justice, Fed. Litigation Div., San Juan, PR, for Domingo Alvarez, Armando Sanchez, defendants.

Mariangela Tirado–Vales, Hato Rey, PR, for plaintiff.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is a motion for summary judgment filed by Defendants José Fuentes Agostini ("Fuentes Agostini"), Lydia Morales, and Pedro Pierluisi (collectively "Defendants") in this action brought pursuant to section 1983.[1] Morales is the former director of the Special Investigations Bureau ("SIB") of the Puerto Rico Department of Justice. Fuentes Agostini is the Secretary of Justice in Puerto Rico. Pierluisi is his immediate predecessor at that position. Fuentes Agostini is sued in both his individual and official capacity; Pierluisi and Morales are sued only in their individual capacities. Plaintiff Amilcar Guilloty Pérez ("Guilloty") is a special agent in the SIB. Armando Sánchez and Domingo Alvarez are also defendants and officers in the SIB. Guilloty brings this claim for monetary and injunctive relief, alleging that Sánchez, Alvarez, Morales, Pierluisi and Fuentes Agostini violated his First Amendment rights.

The Court reviews the record in the light most favorable to Guilloty and draws all reasonable inferences in his favor. *See LeBlanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993). Guilloty became an agent for the SIB in February 1994, with an initial probationary period of two years.[2] In May 1994, Guilloty was assigned to the SIB's Ponce office. Sanchez was the director of that office; Alvarez was the director of the SIB's organized crime and corruption investigations division. Guilloty claims that in his first year of work the Ponce SIB office was the site of a number of irregularities which are at the heart of this controversy. They include the following incidents:

1. Agents from the Ponce office would use official vehicles to pick up hay and horse feed at a commercial horse stable near Ponce. The agents did not pay for these items. It appears that the stables may have been involved in a drug investigation that the office was carrying out.[3]

2. Guilloty was assigned to investigate drug trafficking in the town of Salinas. Pursuant to this investigation, he developed a confidential informant who informed him that a drug shipment was due to arrive on a given night. Guilloty informed Sánchez of this tip. One the night in question the informant called Guilloty to tell him that the shipment was arriving but that no agents were present to make arrests. Guilloty phoned Sánchez, who asked Guilloty

---

1. 42 U.S.C.A. § 1983 (West Supp.1998).

2. Docket no. 35, exhibits 1 & 2.

3. Docket no. 35, exhibit 3, at 6–14; exhibit 4, at 2.

for the source of this information but did nothing to stop the shipment. Guilloty called his informant and told him to contact a United States Customs agent. The shipment was detained by federal authorities. Subsequently Guilloty was removed from the Salinas investigation.[4]

3. In January 1995, Guilloty participated in the arrest of an individual at his home. After the arrest, the individual's car was confiscated because one of the participating agents made out a sworn statement that the individual was smoking marijuana in his car at the time of the arrest. Guilloty claims that he was present at the arrest and that the sworn statement contained a falsified version of the events. He brought this matter to the attention of Sánchez, but he asserted that the agent's statement was correct. Guilloty claims that Sánchez offered to transfer him and provide him with the use of a vehicle in exchange for his silence on this matter.[5]

4. In May 1996, Guilloty complained of irregularities in his time sheet. He claimed that the times and annotations were being changed without his knowledge.[6] Sánchez responded to this complaint in a memorandum in which he detailed the reasons for the changes in Guilloty's time sheets.[7]

Guilloty brought these incidents to the attention of his supervisors and to other high-ranking officials in the Department of Justice. He spoke with Sánchez about his concerns regarding the horse feed, the Salinas drug shipment, and the sworn statement that was used to confiscate the arrested individual's vehicle.[8] He met with Alvarez to discuss the sworn statement incident.[9] He also met with Morales to inform her of these alleged improprieties.[10]

Guilloty claims that his communications regarding the alleged improprieties did not have the effect that he intended. He alleges that Defendants, instead of implementing corrective measures, began to investigate and punish him for his outspokenness. Sánchez wrote a number of memoranda to Alvarez and Morales complaining of Guilloty's poor work performance, attendance, and attitude; detailing misconduct by Guilloty, including the improper use of vehicles and the mishandling of investigations; stating that he had not satisfactorily complied with the guidelines for a probationary employee; and recommending that he be investigated.[11] Guilloty's work evaluations when he first started in the Ponce office were generally good. Over time, and as the controversy regarding these alleged irregularities developed, he began to receive negative evaluations.[12] He claims that these negative evaluations were done in retaliation for his speaking out on the incidents mentioned above. He also claims that as an additional means of retaliation he was given little or no work duties.[13]

On January 24, 1996, Guilloty sent a memorandum to Pierluisi, Morales, Alva-

---

**4.** Docket no. 35, exhibit 4, at 3–4; exhibit 7, at 17–25.

**5.** Docket no. 35, exhibit 4, at 4–5; exhibit 7, at 41–51.

**6.** Docket no. 35, exhibit 4, at 8; exhibits 25 & 26.

**7.** Docket no. 35, exhibit 27.

**8.** Docket no. 35, exhibit 4, at 2–5.

**9.** Docket no. 35, exhibit 3, at 17–18; exhibit 4, at 5.

**10.** Docket no. 35, exhibit 3, at 7–8, 11; exhibit 7, at 25–28.

**11.** Docket no. 35, exhibits 8, 9, 11, 12, 14, 15, 21, 24, 29.

**12.** Docket no. 35, exhibit 35.

**13.** Docket no. 35, exhibit 3, at 20; exhibit 4, at 5, 7; exhibit 7, at 32–34.

rez, and Sánchez in which he complained of the poor evaluations he received from Sánchez and requested that Sánchez be investigated for the alleged reprisals that Sánchez had taken against him for making allegations of irregularities in the Ponce office.[14] This controversy ultimately reached the office of the Secretary of Justice. In early 1996, Pierluisi received Guilloty's file, referred it to an assistant for evaluation, and authorized Alvarez to take certain unspecified steps against Guilloty, as permitted in the department's evaluation manual.[15] In September 1996, Guilloty met with Morales, Alvarez, and Sánchez to discuss the problem of his poor evaluations.[16] Partly as a result of that meeting, Guilloty was transferred to the SIB's office in Aguadilla. When he worked in Ponce, he received many poor evaluations; his evaluations in Aguadilla, by contrast, have generally been excellent.[17] He continues to be a probationary employee.

In December 1996, Guilloty was a source for a series of articles by *El Vocero* newspaper. In the articles Guilloty anonymously described the irregularities regarding the Salinas drug shipment.[18] On January 2, 1997, after the above-described events took place, Fuentes–Agostini succeeded Pierluisi as Secretary of Justice. Guilloty claims that the poor evaluations and Defendants' failure to take him off probationary status and make him a permanent employee were done as retaliation against him for speaking out on these alleged improprieties. He claims that these measures constitute violations of his First Amendment rights. In their motion for summary judgment, Morales, Pierluisi, and Fuentes–Agostini argue that they had no personal involvement in the case; that they are not subject to supervisory liability and they did not act with reckless indifference to Guilloty's constitutional rights; and that Guilloty failed to exhaust his ad-

ministrative remedies. For the reasons set forth below, the Court grants in part and denies in part the motion for summary judgment.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting any facts that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e); *LeBlanc*, 6 F.3d at 841. The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). An issue is genuine when, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512.

1. *Exhaustion of administrative remedies argument*

■ At the outset, the Court may dispose of in short order one of Defendants' arguments. They claim that because Guilloty has not exhausted the administrative remedies afforded him under the Puerto

14. Docket no. 35, exhibit 22.

15. Docket no. 27, exhibit III.

16. Docket no. 35, exhibit 4, at 8–9.

17. Docket no. 35, exhibits 34 & 35.

18. Docket no. 35, exhibit 32.

Rico Public Service Personnel Act,[19] his claim should be dismissed. Defendants cite no case law whatsoever to bolster this argument. This lack of supporting citations is understandable: a plaintiff is generally not required to exhaust state or administrative remedies before bringing a section 1983 action in federal court. *See Patsy v. Bd. of Regents of Florida,* 457 U.S. 496, 514–16, 102 S.Ct. 2557, 2567–68, 73 L.Ed.2d 172 (1982); *Steffel v. Thompson,* 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974); *Baez–Cruz v. Municipality of Comerio,* 140 F.3d 24, 30 (1st Cir.1998); Erwin Chemerinsky, *Federal Jurisdiction* § 8.4, at 437–43 (2nd ed.1994). Accordingly, the Court denies Defendants' argument to dismiss for failing to exhaust administrative remedies.

### 2. First Amendment claim

▪ In the present case, Defendants argue that they had no personal involvement in Guilloty's alleged constitutional injury and that they are not subject to supervisory liability. Under section 1983, a supervisor may not be liable based upon a theory of *respondeat superior. Monell v. Dept. of Social Services of New York,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978); *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). He may only be held liable on the basis of his own acts or omissions. *Febus–Rodriguez v. Betancourt–Lebrón,* 14 F.3d 87, 91–92 (1st Cir.1994). Furthermore, a supervisor may not be found liable pursuant to section 1983 for mere acts of negligence. *Maldonado–Denis,* 23 F.3d at 582; *Febus–Rodriguez,* 14 F.3d at 92. A claim under section 1983 has two essential elements: (1) the conduct complained of must have been committed under color of state law, and (2) the conduct must have worked a denial of rights that are protected by the Constitution or laws of the United States. *Martinez v. Colon,* 54 F.3d 980, 984 (1st Cir.1995). With regard to the first element, the parties do not dispute

that Defendants acted under color of state law. The second element has two aspects: (i) there must have been a deprivation of federal rights and (ii) there must have been a causal connection between the conduct complained of and the deprivation of rights. *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989); *Voutour v. Vitale,* 761 F.2d 812, 819 (1st Cir. 1985).

▪ Guilloty claims that Defendants' conduct violated his First Amendment rights. An individual does not lose his First Amendment rights when he becomes a government employee. *Tang v. Rhode Island,* 163 F.3d 7, 10 (1st Cir.1998). When the government is acting as an employer, it has broader powers to limit speech than it does when it is acting as the sovereign. *Waters v. Churchill,* 511 U.S. 661, 671–72, 689, 114 S.Ct. 1878, 1886, 1890, 128 L.Ed.2d 686 (1994) (plurality opinion). The government should be given wide discretion and control to manage its own internal affairs and personnel. *Connick v. Myers,* 461 U.S. 138, 151, 103 S.Ct. 1684, 1692, 75 L.Ed.2d 708 (1983) (quoting *Arnett v. Kennedy,* 416 U.S. 134, 168, 94 S.Ct. 1633, 1651, 40 L.Ed.2d 15 (1974)) (Powell, J., concurring). Part of this management includes dealing with the statements and speech of government employees. Although it is advisable that public officials be receptive to constructive criticism, that does not mean that a public agency must be run as a roundtable to hear and consider every employee complaint regarding the agency's internal affairs. *Connick,* 461 U.S. at 149, 103 S.Ct. at 1691. Thus, when the government acts as an employer, its employees' First Amendment rights must be balanced against the government's need to manage its affairs efficiently. *Waters,* 511 U.S. at 675, 114 S.Ct. at 1888. Generally, the employees' rights of free expression will be protected so long as that expression does not impede the government's interest, as an employer, in efficiently performing its

**19.** P.R.Laws Ann. tit. 3, §§ 1301 – 1431    (1992).

duties. *O'Connor v. Steeves*, 994 F.2d 905, 912 (1st Cir.1993).

█ A government employee's claim that his employer has violated his First Amendment rights is normally analyzed under a three-step test. First, the court must determine whether the employee's statements were on matters of public concern or merely of personal interest. *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690; *Tang*, 163 F.3d 7, 10. Second, the court must balance the employee's First Amendment rights against the government's interest in efficient agency performance. *Pickering v. Bd. of Educ. of Township High School*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968); *Tang*, 163 F.3d 7, 10. Third, the employee must show that his expressions were a substantial or motivating factor in the government's adverse employment decision; the government then must show that it would have made the same decision even if the employee had never made the statements. *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *O'Connor*, 994 F.2d at 913.

Under the first threshold step, the court must decide whether the speech at issue deals with a matter of public concern. In making this analysis, it is necessary to determine, based on the form, context, and content of the speech, as indicated by the whole record, whether the employee was speaking "as a citizen upon matters of public concern," or "as an employee upon matters only of personal interest." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690; *O'Connor*, 994 F.2d at 912. If the issue is a personal matter and not one of public concern, the employment decision generally may not be challenged in federal court. *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690; *O'Connor*, 994 F.2d at 912. A court should not presume that all matters dealt with in a government office are of public concern. To do so would be to make every government employee's remark or criticism the grounds for a constitutional case. *Connick*, 461 U.S. at 149, 103 S.Ct. at 1691.

█ An employee's complaints about his personal working conditions will generally not be protected. *Tang*, 163 F.3d 7, 10–11. Expressions which raise the issues of official misconduct, abuse of office, misappropriation of public funds, on the other hand, are matters of public concern and should be protected. *See O'Connor*, 994 F.2d at 908, 913–15 (Claim that municipal officer was making purchases of items for personal use through the municipality's account to avoid state sales tax was a matter of public concern); *Breuer v. Hart*, 909 F.2d 1035, 1038 (7th Cir.1990) (Allegation that a government employee was paid for work that she did not perform only because of her personal relationship with the sheriff).

█ In the present case, Guilloty's allegations of a mishandled drug investigation, a falsified sworn statement by a police officer, and the use by police officers of official vehicles to receive gifts from a commercial stable which was the target of a possible drug investigation are all claims that raise the ugly specter of public corruption and mismanagement. These are certainly matters of public concern, and Defendants do not argue otherwise. Guilloty's claims about his time sheets, however, present a different matter. They are complaints that he was not properly credited for hours worked. In a memorandum responding to these complaints, Sánchez explained why Guilloty was credited for the hours that appear on his time sheets.[20] The time sheet controversy is a dispute between Guilloty and Sánchez over the number of hours to which Guilloty is entitled. This issue falls in the general category of employee working conditions. It is a personal matter, and thus it is not entitled to First Amendment protection. The Court will therefore proceed to the next two steps of the test only as to Guilloty's statements regarding the Salinas drug

**20.** Docket no. 35, exhibit 27.

shipment, the horse feed, and the falsified sworn statement.

■ Once the court determines that the employee's speech is a matter of public concern, it must next do a balancing under the second step. At this step, a court should balance the employee's First Amendment rights, as well as any public interest in the information about which the employee was speaking, against the government's interest in promoting the efficient performance of the service the government agency seeks to provide through its employees. *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35; *O'Connor*, 994 F.2d at 912. The court must consider the significance of the interests of the employee's speech against the government employer's interests of avoiding unneeded disruptions to its mission of serving the public. *O'Connor*, 994 F.2d at 915. It is the government's dual role of a public employer and the sovereign operating under the First Amendment's constraints which makes this balancing necessary. *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 2897, 97 L.Ed.2d 315 (1987). In making this analysis, a court must consider the manner, time, place, and context of the employee's statements. *Id.* at 388, 107 S.Ct. at 2899. Among the factors which a court should take into account are whether the employee's comments disrupt harmony among co-workers; impede superiors from maintaining discipline; interfere with the agency's regular operations; or detract from the speaker's performance. *Id.*

When an agency requires close working relationships to enable it to fulfill its public duties, the public employer's judgment should be afforded a wide degree of deference. *Connick*, 461 U.S. at 151–52, 103 S.Ct. at 1692; *Propst v. Bitzer*, 39 F.3d 148, 152–53 (7th Cir.1994). This is particularly true in the law enforcement field, where order, discipline, and *esprit de corps* are essential for operating in what can be life or death situations. *Breuer*, 909 F.2d at 1041. Additionally, at this second step the employer must show that the employ-

ee's speech had a detrimental impact on working relationships. *Brasslett v. Cota,* 761 F.2d 827, 845 (1st Cir.1985). The employer has the burden of presenting legitimate reasons for the adverse action taken against the employee. *Rankin,* 483 U.S. at 388, 107 S.Ct. at 2899; *Breuer,* 909 F.2d at 1039. This burden will vary depending upon the nature of the employee's statements. *Connick,* 461 U.S. at 150, 103 S.Ct. at 1691–92.

■ In the present case, it appears that Guilloty voiced his concerns about the alleged irregularities through internal channels of communication. He spoke directly to Sánchez about them, he wrote memoranda to other supervisors in the agency, and he met with these people as well. The evidence does not indicate that the manner in which Guilloty made these expressions disrupted the functioning of the SIB office in Ponce, damaged harmony in the office, or prevented Sánchez from maintaining discipline. The topic upon which Guilloty was speaking was certainly a delicate one, but his use of the channels of communication does not appear to have prevented the SIB office from doing its work. As discussed above, Defendants have the burden at this step to justify the adverse actions taken against Guilloty. They have failed to address this issue, and therefore have failed to meet their burden. Thus, for purposes of this motion for summary judgment only, the Court assumes that the balancing required at this second step of the analysis favors Guilloty's interest in speaking out on these issues.

If a court determines that a public employee's interests in speaking out on a matter of public concern outweigh the government's legitimate interest in promoting efficiency and curbing the employee's speech, the court must then proceed to the third step of the test. *O'Connor,* 994 F.2d at 913. Under this step, the employee has an initial burden to show that his protected expression was a substantial or motivating factor in the adverse employment action taken against him. *Mt. Healthy,* 429 U.S.

at 287, 97 S.Ct. at 576; *O'Connor*, 994 F.2d at 913. The plaintiff may meet this burden with circumstantial evidence. The close chronological order of a plaintiff's protected conduct and a defendant's alleged retaliatory conduct may warrant an inference of retaliation. *See Ferranti v. Moran*, 618 F.2d 888, 892 (1st Cir.1980); *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.1979); *see also Anthony v. Sundlun*, 952 F.2d 603, 605 (1st Cir.1991) (Circumstantial evidence can be helpful to determine an actor's motive). Once the plaintiff has met his burden, the defendant must then show by a preponderance of the evidence that it would have taken the same action even in the absence of the plaintiff's protected conduct. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576; *O'Connor*, 994 F.2d at 913.

■■■ In the present case, Guilloty claims that he was subject to adverse treatment in reprisal for his statements regarding the irregularities. There is evidence in the record that his job evaluations, which initially were positive, became negative and critical after he began to speak out.[21] There is also evidence that he was denied substantial work duties after this controversy developed.[22] Although Sánchez appears to be the one who took these measures against Guilloty, Morales and Pierluisi were made aware of them through meetings or memoranda on the topic. This evidence is sufficient to raise an inference that Morales and Pierluisi were aware of the alleged retaliation against Guilloty. This circumstantial evidence is sufficient to allow Guilloty to meet his burden at the summary judgment stage as to these two defendants. As to Fuentes Agostini, however, the evidence is less convincing. He did not become Secre-

tary of Justice until January 2, 1997, after the events and alleged retaliation about which Guilloty complains. There is no evidence that he was aware of this situation or personally involved in it. Accordingly, the Court must grant the motion for summary judgment as to Fuentes Agostini in his individual capacity.[23]

Once Guilloty met his burden in the *Mt. Healthy* test, Morales and Pierluisi had the burden of showing that the same actions would have been taken against Guilloty even if he had not spoken out on the alleged irregularities. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576; *O'Connor*, 994 F.2d at 913. As discussed above, there is sufficient evidence to create a genuine issue as to the personal involvement of Morales and Pierluisi in Guilloty's complaints and subsequent adverse treatment. And although Defendants acknowledge the applicability of the *Mt. Healthy* test, they completely fail to make any arguments or adduce any evidence to support their burden at this stage of the test. They do claim that Morales and Pierluisi took affirmative steps to respond to Guilloty's situation. With regard to Pierluisi, the only evidence in the record is that some unspecified action was taken by his office as to Guilloty. Pierluisi's sworn statement does not indicate what was the nature of this action nor whether it was favorable to Guilloty.[24] Without more specifics, his motion for summary judgment must fail. As to Morales, the record indicates that she met with and received memoranda from Guilloty on this problem. However, it is not clear from the record that she corrected the situation and took steps to stop the alleged retaliatory measures. Also, Guilloty continues to be a probationary employee, even though he is now receiving excellent evaluations and

---

**21.** Docket no. 35, exhibit 35.

**22.** Docket no. 35, exhibit 3, at 20; exhibit 4, at 5, 7; exhibit 7, at 32–34.

**23.** In addition to monetary relief, Guilloty is also seeking injunctive relief that he be promoted from probationary to permanent em-

ployee status. Thus, only insofar as the Secretary of Justice will be required to order that Guilloty receive permanent employee status should he prevail, Fuentes Agostini remains a defendant in his official capacity.

**24.** Docket no. 27, exhibit III.

even though his two-year probationary period has passed. Morales and Pierluisi have failed to meet their burden in the *Mt. Healthy* test. Accordingly, their motion for summary judgment must be denied.

### 3. Qualified immunity

As is often the case in section 1983 cases, the defendants claim that they are entitled to qualified immunity protection. The qualified immunity doctrine protects state officials from civil liability under section 1983 so long as their conduct does not violate a clearly established constitutional right of which a reasonable official would have been cognizant. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Ringuette v. City of Fall River,* 146 F.3d 1, 5 (1st Cir.1998). A state actor claiming qualified immunity must do so either under a theory that the asserted constitutional right was not clearly established or under the theory that his conduct satisfies the test of objective legal reasonableness. *Camilo–Robles v. Hoyos,* 151 F.3d 1, 5–6 (1st Cir.1998). The question in this analysis is not whether the right is clearly established at a highly abstract level; rather, the question is whether, under the circumstances at hand, a reasonable officer would understand that his conduct was violating a constitutional right. *Berthiaume v. Caron,* 142 F.3d 12, 15 (1st Cir.1998). This test is purely an objective one. *Crawford–El v. Britton,* 523 U.S. 574, ——, 118 S.Ct. 1584, 1591–93, 140 L.Ed.2d 759 (1998); *Brown v. Ives,* 129 F.3d 209, 211 (1st Cir. 1997).

It has long been clearly established that government action taken in retaliation for an individual's exercise of his First Amendment rights is a constitutional violation. *See Crawford–El,* 523 U.S. at ——, 118 S.Ct. at 1594; *Mt. Healthy,* 429 U.S. at 283–84, 97 S.Ct. at 574; *Ferranti,* 618 F.2d at 892 n. 4; *McDonald,* 610 F.2d at 18. In the present case, there are factual issues as to the motives and actions of Morales and Pierluisi. Granting qualified immunity at the summary judgment stage may not be appropriate where there is a factual issue as to an essential element of the plaintiffs' claim. *Swain v. Spinney,* 117 F.3d 1, 10 (1st Cir.1997). The qualified immunity standard is an objective one. However, if there is a factual issue in dispute as to an essential subjective element of the underlying claim, granting the defendant qualified immunity at the summary judgment stage would not be appropriate. *Crawford–El,* 523 U.S. at ——, 118 S.Ct. at 1592. In the present case, there are factual issues both as to the nature of the involvement of Morales and Pierluisi, as well as their motivations for their involvement. Because there are factual issues as to essential elements of Guilloty's claim, the request for qualified immunity must be denied.

WHEREFORE, the Court grants the motion for summary judgment (docket no. 27) as to Fuentes Agostini in his individual capacity, but denies it as to the arguments to dismiss the claims against Morales and Pierluisi.

**IT IS SO ORDERED.**