Bernabe **TEJADA BATISTA,** Plaintiff,

v.

Jose **FUENTES AGOSTINI,**
et al., Defendants.

No. CIV. 97–1430(JAF).

United States District Court,
D. Puerto Rico.

March 17, 2000.

Irma R. Valldejuli–Perez, San Juan, PR, for Bernabe Tejada–Batista, plaintiff.

John M. Garcia–Nokonechna, Garcia & Fernandez Law Offices, Hato Rey, PR, Miriam Soto–Contreras, Department of Justice of PR, General Litigation Division, Arecibo, PR, for Jose A. Fuentes–Agostini.

Luis A. Plaza–Mariota, Hato Rey, PR, Miriam Soto–Contreras, Department of Justice of PR, General Litigation Division, Arecibo, PR, for Lydia Morales.

John F. Nevares, Smith & Nevares, San Juan, PR, Osvaldo H. Puig–Hernandez, San Juan, PR, Miriam Soto–Contreras, Department of Justice of PR, General Litigation Division, Arecibo, PR, for Domingo Alvarez, Ernesto Fernandez, Antonio Franco, Cristobal Irrizary.

Osvaldo H. Puig–Hernandez, San Juan, PR, for Miguel Gierbolini.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff, Bernabé Tejada–Batista, ("Tejada") seeks damages under the Civil Rights Act, 42 U.S.C. § 1983 (1988), for an alleged violation of his First and Fourteenth Amendment rights, from Defendant José A. Fuentes–Agostini, Attorney General of the Commonwealth of Puerto Rico, in his personal capacity; Defendant Lydia Morales, Director of the Special Investigations Bureau ("S.I.B.") of the Commonwealth's Department of Justice ("D.O.J."), in her personal capacity; Defendant Domingo Alvarez, Director of the Corruption and Organized Crime Investigation Division ("C.O.C.I.D.") of the S.I.B., in his personal capacity; Defendant Ernesto Fernández, the Supervisor of the Homicide Section of the C.O.C.I.D., in both his personal and official capacities; Defendant Antonio Franco, Supervisor of the Intelligence Section of the C.O.C.I.D., in his personal capacity; Defendant Cristóbal Irizarry, Supervisor of the Stolen Vehicle Section of the C.O.C.I.D., in his personal capacity; and Defendant John Doe, a D.O.J. employee. All positions held by Defendants are stated as effective at the time relevant to this suit. Defendants move for reconsideration of our Opinion and Order denying their motions for summary judgement.

### I.

### Relevant Background

Given that Defendant's motion for reconsideration asserts no new or contested facts, we restate our previous factual summary here. Plaintiff was employed at the D.O.J. as an Assistant Agent for the S.I.B. since approximately January 1987 until the D.O.J. terminated his employment on March 4, 1997. From early 1991 to January 4, 1994, Plaintiff was on military leave which included active duty in "Operation Desert Storm." During this period, on or about June 14, 1993, while still an S.I.B. employee, Plaintiff was arrested and charged with three felonies under Puerto Rico law involving domestic violence: Abuse by Threat, Aggravated Abuse, and Aggravated Arson. On September 13, 1993, following a trial, the Puerto Rico Superior Court convicted Plaintiff of "Abuse" under the Puerto Rico Domestic Abuse Prevention and Intervention Act. See 8 L.P.R.A. § 601 (1986); 33 L.P.R.A. § 3044 (1983). After Plaintiff underwent a rehabilitation program, the Puerto Rico Superior Court, on November 7, 1995, set aside Plaintiff's conviction. Defendants allege that throughout these procedures in state court, Plaintiff identified himself only as a member of the National Guard, not a D.O.J. agent, for the purpose of avoiding disciplinary action by the D.O.J.

In January 1995, Plaintiff was assigned to the Homicide Section of the C.O.C.I.D. under the supervision of Defendant Fernández. Several months later, Plaintiff was transferred to the section which investigates corruption among government employees.

While working in this division, Plaintiff was an undercover agent in a Dominican drug-trafficking gang. During this investigation, he alleges that he witnessed coworkers misappropriating public funds and allowing illegal drug transactions to go unpunished. Plaintiff alleges that as a result, he was placed in jeopardy and left without protection from the underworld he had infiltrated. He subsequently moved his family out of Puerto Rico at his own expense for their safety. On May 19, 1995, Plaintiff wrote a memorandum bringing this situation to the attention of Defendant Morales, through Defendants Alvarez and Franco. Plaintiff alleges that Defendants took no action regarding this alleged official corruption. Plaintiff also alleges that he asked for a transfer from his undercover assignment, alleging that he feared that a government informant with whom he worked and a hitman whom Plaintiff had investigated may harm him, but was transferred to the Stolen Vehicle

Section, a division that Plaintiff implies constitutes a demotion.

On April 23, 1996, Defendant Franco wrote a memorandum to Defendant Alvarez regarding Plaintiff's alleged misconduct in communicating with an informant without authorization, although only for personal purposes, and stating that he believed Plaintiff not to be fit for the job of an agent. On September 23, 1996, Defendant Irizarry wrote Defendant Alvarez a memorandum inquiring whether Plaintiff's paid military leave, a total of approximately sixty-seven days in 1996, was within the legally permitted scope. Defendant Alvarez requested that Defendant Morales refer this memorandum to the Personnel Division. On October 1, 1996, Elba de León, S.I.B. legal counsel on matters of Personnel and Human Resources, informed Defendant Morales that Plaintiff was on paid military leave in excess of the days legally allowed.

On December 10, 1996, the newspaper EL VOCERO published an article entitled, "S.I.B. Director and Assistant Denied Agent Transfer Although His Life Was In Danger." [1] The next day, EL VOCERO published a second article entitled, "Domingo Alvarez of the S.I.B.—Forbids Arrest in Drug Transactions," which described facts and circumstances of an undercover investigation.[2] Defendant Alvarez immediately wrote a memorandum to Defendant Morales regarding this information, which he considered to be of a confidential nature, that Plaintiff had revealed to the press. Defendant Morales referred the letter to S.I.B. Sub–Director Miguel Gierbolini, who referred the memorandum to De León for evaluation.

Also on December 11, 1996, on the basis of an anonymous telephone call, the S.I.B. discovered that criminal charges for domestic violence had been brought against Plaintiff approximately two years earlier. On December 12, 1996, Defendant Alvarez wrote Defendant Morales a memorandum regarding these criminal charges, which Morales referred to Gierbolini for a written recommendation to the Attorney General. Again, Gierbolini referred the memorandum to De León for evaluation.

In January 1997, Defendant Fuentes–Agostini was appointed Secretary of Justice. On February 4, 1997, Gierbolini requested that Plaintiff's employment be terminated and, on February 27, Defendant Fuentes–Agostini signed Plaintiff's termination letter. The D.O.J. informed Plaintiff of his employment termination on March 4, 1997, stating that the basis of the termination was his domestic violence conviction. The D.O.J. granted Plaintiff thirty days to request an informal hearing, which was held on November 17, 1997. At the hearing, the only evidence Defendant Fuentes–Agostini presented in support of Plaintiff's dismissal was the domestic violence conviction. Plaintiff presented no evidence.

During this period, on March 31, 1997, EL VOCERO published a third article regarding the S.I.B. entitled, "S.I.B. Ex–Agent—Thought He Complied with Duty and Was Kicked Out." [3]

## II.

### *Analysis*

As we noted in our previous Opinion and Order, Plaintiff rests his section 1983 claim upon the allegation that the D.O.J. terminated his employment solely because he provided information to a local newspaper, EL VOCERO, regarding alleged official misconduct and corruption within D.O.J.

1. This is the translated title of the article which is originally in Spanish. The title in Spanish reads, "Negaron traslado agente aunque peligraba su vida."

2. This is the translated title of the article which is originally in Spanish. The title in Spanish reads, "Domingo Alvarez del NIE Prohibe arresto en transacción drogas."

3. This is the translated title of the article which is originally in Spanish. The title in Spanish reads, "Pensó cumplía deber y lo botaron."

Arguing that they terminated Plaintiff's employment solely because of his conviction for domestic violence, Defendants refute this allegation. In our June 29, 1998 Opinion and Order, we found that "Defendants' true reason for terminating Plaintiff's employment is a genuine issue of material fact the resolution of which is the responsibility of the fact-finder." *Docket Document No. 66.* Consequently, we denied Defendants' motion for summary judgment since a jury would resolve the motivation issue. *See* FED. R. CIV. P. 56(c); *Lipsett v. University of P.R.*, 864 F.2d 881, 894 (1st Cir.1988).

On reconsideration, Defendants propose that *Tang v. State of R.I., Dept. of Elderly Affairs*, 163 F.3d 7 (1st Cir.1998), decided subsequent to our June 29, 1998 Opinion and Order, mandates that we reevaluate our holding requiring that the jury determine Defendants' motivation for firing Plaintiff. Loosely employing the three-step analysis outlined in *Tang*, Defendants maintain that Plaintiff's claims are not of a public concern, but rather "individual personal complaints about working conditions." *Docket Document No. 81.* Alternatively, Defendants, entirely omitting the second of *Tang*'s three-step analysis, reiterate their contention that they based Plaintiff's termination solely upon his prior conviction for domestic violence.[4]

■ Plaintiff disputes Defendants' contention that the content of his speech is not of public concern. He restates that his complaints, which allegedly were initially raised with his superiors and then the press, included: (1) the illegal use of public

funds by government agents; (2) the payment of public funds to an informant who was committing criminal acts; (3) the placement of government agents in danger and jeopardizing drug investigations at will; and (4) the failure of a public agency empowered to investigate and prosecute organized crime to make appropriate arrests. Plaintiff also alleges that as a result of his statements to the press, his employer denied him adequate protection for his life, transferred him to an inoperative division, and finally summarily terminated his employment. In sum, Plaintiff argues that his speech to EL VOCERO was of public concern. We agree.

■ As noted by Defendants, *Tang* outlines the three-step analysis which courts should apply to determine if a former public employee has an actionable First Amendment freedom of speech claim against her employer. *See Faerber v. City of Newport*, 51 F.Supp.2d 115, 120–22 (D.R.I.1999) (applying standard); *Perez v. Agostini*, 37 F.Supp.2d 103, 108–12 (D.P.R. 1999) (same). Accordingly, the three steps are:

First, the court must determine whether [the plaintiff] made her statements "as a citizen upon matters of public concern." If the speech involved matters not of public concern, "but instead ... of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Second, the court must weigh the strength

---

4. As another basis for reconsidering our denial of their summary judgment motion, Defendants assert, without any explanation or a single citation of authority, that Plaintiff misused his state-issued firearm. Since we reaffirm our denial of summary judgment for essentially the same reasons as our initial denial, this argument is, at best, totally irrelevant. Moreover, we decline "to review the qualified immunity defense in light of the fact that federal law criminalizes [P]laintiff's firearm possession[,] and a criminal offense would be in contravention of the Department

of Justice['s] personnel regulations." *Docket Document No. 81.* Again, Defendants in their motion for reconsideration fail to elaborate further, provide any authority for their assertions, or refer us to a docketed document. In any case, we note that even if Plaintiff had violated and been convicted of firearm possession, which, as far as we know, is a purely hypothetical fact, the conviction would speak to Defendants' motivation for terminating his employment, an issue which necessarily goes to the jury, the fact-finder in this case.

of the employee's and the public's First Amendment interests against the government's interest in the efficient performance of the workplace. Third, if the employee's and the public's First Amendment interests outweigh a legitimate governmental interest in curbing the employee's speech, [the plaintiff] must show that the protected expression was a substantial or motivating factor in an adverse employment action.

*Tang*, 163 F.3d at 12 (internal citations omitted). A court decides the first two steps as a matter of law. *See id.; see also, e.g., Johnson v. Clifton*, 74 F.3d 1087, 1092 (11th Cir.1996); *Kincade v. City of Blue Springs, Mo.*, 64 F.3d 389, 395 (8th Cir. 1995); *Simon v. City of Clute, Tex.*, 825 F.2d 940, 943 (5th Cir.1987). *But see Faerber*, 51 F.Supp.2d at 122 (stating that plaintiff must satisfy the second and third prongs of Tang test at trial). The factfinder, however, determines the question of whether the speech motivated the employer's decision to take adverse action against the employee. *See Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1094 (1st Cir.1995) (stating that the determination of an employer's reason for discharging an employee was an issue of fact precluding summary judgment); *Broderick v. Roache*, 996 F.2d 1294 (1st Cir.1993) (stating that, in a section 1983 action by police officer against police official, the official's motive in disciplining plaintiff allegedly in retaliation for his exercise of First Amendment rights was an issue of fact precluding summary judgment); *Caro v. Aponte–Roque*, 878 F.2d 1 (1st Cir.1989) (stating that in suit involving an alleged First Amendment violation, the motivation behind the employer's decision for firing plaintiffs was an issue of fact precluding summary judgment); *see also, e.g., Wulf v. City of Wichita*, 883 F.2d 842, 856 (10th Cir.1989); *Crawford v. Garnier*, 719 F.2d 1317, 1323 (7th Cir.1983). We, thus, decide whether Plaintiff's speech concerned the public or was primarily a private matter.

Given that Plaintiff's allegations to the press implicated government officials in misconduct that jeopardized the lives of law enforcement agents and corruption that squandered the public's trust, we have no alternative but to find that Plaintiff's speech was of public concern. *See O'Connor v. Steeves*, 994 F.2d 905, 915 n. 6 (1st Cir.1993) (finding allegations of corruption, impropriety, and other malfeasance by public officials constitute matters of inherent public concern); *Agostini*, 37 F.Supp.2d at 109 (finding allegations of mishandled drug investigation and misappropriation of government resources raise specter of public corruption and mismanagement); *see also, e.g., Wulf*, 883 F.2d at 857.

 Having determined that Plaintiff's speech is protected, we proceed to the next phase of inquiry—whether Plaintiff's First Amendment rights, as well as the public's interest in the information about which the employee spoke, outweigh the government's interest in efficient agency performance. *See Tang*, 163 F.3d at 11 (citing *Pickering v. Board of Educ. of Township High School*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). To make this determination, a court should consider the time, place, manner, and context of the employee's speech. *See Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). A court should also assess whether the employee's speech disrupted harmony among co-workers; impeded superiors from maintaining discipline; interfered with the agency's regular operations; or detracted from the speaker's job performance. *See Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

 Generally, courts afford much deference to a public employer's disciplinary decisions concerning its personnel. *See Agostini*, 37 F.Supp.2d at 110 (citing *Connick*, 461 U.S. at 151–52, 103 S.Ct. 1684) (other citation omitted). This is particularly true in law enforcement, where agents often face life or death situations

and must rely upon the discipline and esprit de corps among their comrades to temper this danger. *See Breuer v. Hart,* 909 F.2d 1035, 1041 (7th Cir.1990). Nevertheless, a public employer needs to demonstrate that the employee's speech detrimentally impacted working relationships within the agency. *See Brasslett v. Cota,* 761 F.2d 827, 845 (1st Cir.1985).

In this case, after having read the newspapers articles in question, we find that the nature of Plaintiff's accusations in the press implicates the integrity and effectiveness of a law enforcement agency, entrusted by the general populace to secure their safety and combat crime. Moreover, Plaintiff's allegations sufficiently detail events so as to permit a reasonable finding of credibility, although we make no such finding now. We also find significant the fact that Plaintiff pursued official channels of redress within his employing agency to purported little avail.

With regard to the impact of Plaintiff's speech on his former employer, Defendants proffer that Plaintiff provided information to the local newspaper concerning ongoing criminal investigations which consequently endangered the lives of potential witnesses and law enforcement agents, limited the availability of material evidence, and disrupted the success of ongoing and future investigations. *See Docket Document No. 60.* While we are greatly concerned by the gravity of these allegations, Plaintiff's claims are equally severe. Furthermore, we believe that, due to the nature of Plaintiff's assertions, greater transparency and accountability on the part of public officials are required to address the issues raised by him. Finally, we have seen no proffered evidence that Plaintiff's protected speech to EL VOCERO actually detrimentally impacted D.O.J.'s operations.

Consequently, we find that Plaintiff's protected speech outweighs the D.O.J.'s interests in, inter alia, harmony and good supervisor-employee relations. *See O'Connor,* 994 F.2d at 915 (finding plaintiff's

disclosures of alleged public corruption occupy highest rung within First Amendment hierarchy and weigh heavily in favor of First Amendment protection against retaliation); *Santos v. Miami Region, United States Customs Serv.,* 642 F.2d 21, 24–25 (1st Cir.1981). *But see also Breuer,* 909 F.2d at 1041 (upholding dismissal of deputy sheriff for whistle blowing on alleged corruption by sheriff).

■ If a court resolves the *Pickering* balancing in favor of the plaintiff, the next stage of inquiry is whether the plaintiff's protected speech was the substantial or motivating factor in the adverse employment action taken against him. *See O'Connor,* 994 F.2d at 913 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). However, in this case, the jury is the fact-finder charged with determining Defendants' motivating factor for terminating Plaintiff's employment. *See Woodman,* 51 F.3d at 1094.

### III.

### *Conclusion*

In accordance with the preceding analysis, we **DENY** Defendants' "Motion for Reconsideration of Order under Recent First Circuit Case Law," *Docket Document No. 81,* and **REAFFIRM** our denial of Defendants' motion for summary judgment.

**IT IS SO ORDERED.**