Matthew J. FAERBER, Jr., Plaintiff,

v.

CITY OF NEWPORT, Michael D. Malikoff, personally and in his official capacity, and Roy B. Anderson, personally and in his official capacity, Defendants.

No. C.A. 97–731L.

United States District Court, D. Rhode Island.

June 10, 1999.

Turner C. Scott, Miller, Scott, Howe & Kelley, Newport, RI, for plaintiff.

Marc DeSisto, Providence, RI, for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

Matthew Faerber, Jr. ("Faerber") worked 23 years for the City of Newport where he reached the position of Deputy Utilities Director overseeing the Water Division. He was suspended without pay on November 4, 1997 and terminated from his job later that month. He has sued the City of Newport, Newport Director of Utilities Roy B. Anderson and Newport City Manager Martin Malikoff (collectively "defendants") in a ten-count complaint.

This case is before the Court on defendants' motion for summary judgment. Faerber has alleged a motley list of counts including violations of the state and federal constitutions, the violation of a state statute, breach of contract and abuse of discretion. Defendants seek summary judgment on all counts. The problem with this motion is that defendants' arguments are as motley as Faerber's allegations. Neither side cited authorities sufficient to support their positions, so this Court addresses each count in an attempt to limit the issues and confusion at trial.

At the heart of Faerber's case is the claim that he was fired for expressing his opinion to three city council members. He alleges that his rights were violated both procedurally and substantively. All federal claims except for the First Amendment count are flawed, and as explained below, this Court grants summary judgment to defendants on the procedural due process, equal protection and substantive due process claims. The state-law claims, at this point, are a distraction, and this Court will sever them for a separate trial. This will expedite the case and promote both economy and convenience.

In sum, this Court grants the summary judgment motion in part and denies it in part as explicated below.

### I. Facts

This case arose because Newport needed to hire someone to fill the position of Deputy Utilities Director—Wastewater. The job became vacant in September 1995, and it stayed open for years because the only internal candidate who had a Grade 4 State Wastewater Certificate would not take the job because of the low pay scale and all external candidates could not pass the test for the Certificate.

The position was listed at Salary Grade 13 ("S–13") on the City's Classification Plan for Executive, Administrative and Professional Employees. In 1997, it was advertised and posted at the S–13 pay level with the requirement of a Grade 4 Wastewater Certificate. No qualified person applied for the position.

Therefore, the City Council decided to change the position to S–16, which meant that the job would pay more. The City did not readvertise the position to publicize the higher pay. Instead, the City proposed to hire a person from a private company even though that person did not have the Certificate.

On the evening of October 7, 1997, plaintiff telephoned three members of the City Council to lobby them against making the hire. Plaintiff was not eligible or interested in the opening, but he says he called the councilors because the City was not following the Personnel Code. The Council was to consider the issue the next day, and plaintiff says he wanted the City to follow lawful procedures.

Malikoff and Anderson heard about the phone calls, and over the next two months, they engineered plaintiff's dismissal. On October 10, 1997, Anderson sent plaintiff a disciplinary notice. On November 4, 1997, Anderson and plaintiff met, and plaintiff was placed on unpaid leave. On November 13, 1997, Malikoff sent plaintiff a letter, terminating his employment effective November 21, 1997. That letter states, among other things, that plaintiff was being fired for:

> various acts of insubordination when ignoring direct orders from your Director, stemming from your acts against the proposed upgrade of the Deputy Utilities Director—Wastewater.

A Newport City Ordinance states that a fired employee can appeal to the Personnel Appeals Board [the "Appeals Board"]. The Appeals Board reviews the City Manager's decision, and its decision is final. *See* Newport City Ordinance 3.36.020(F) (attached as Exhibit E to D.'s Mem. of Law in Supp. of Their Mot. For Summ.J).

However, no members were sitting on the Appeals Board in December 1997. *See* Letter of Behan to Scott of Dec. 31, 1997 at 1 (assistant city solicitor noting that "the Personnel Appeals Board has not been in existence for a number of years"). Since then, Newport has apparently appointed three members to the Appeals Board, and plaintiff has appealed his dismissal to the Board in addition to filing this case. It is unclear when the Board was reborn or when that appeal was filed.

Plaintiff filed this suit in the Rhode Island Superior Court sitting in Newport County on December 22, 1997, certainly before the Appeals Board was reborn. The Complaint sets forth nine separate causes of action. (Count X contains the prayers for relief.) In Count I, plaintiff alleges that defendants violated the grievance procedure set forth in the City Personnel Code. In Count II, plaintiff avers that defendants abused their discretion by wrongfully dismissing him in violation of the Personnel Code. In Count III, plaintiff charges that defendants committed a breach of the implied contract he has with the City. In Count IV, plaintiff makes a claim under 42 U.S.C. § 1983 that his due process rights under the 14th Amendment of the federal Constitution have been violated. In Count V, plaintiff claims a violation of the state Whistleblower's Protection Act, R.I.Gen.Laws § 28–50–1 *et. seq.* In Count VI, plaintiff makes a claim under Section 1983 that his First Amendment right of free speech has been abridged. In Count VII, he makes a Section 1983 claim of violation of his equal protection rights under the Fourteenth Amendment of the federal Constitution. In Count VIII, plaintiff makes another claim under Section 1983, this time that defendants violated his substantive due process rights as provided in the federal Constitution. Finally, in Count IX, he claims a violation of the due process, freedom of speech and equal protection clauses in the Rhode Island Constitution.

Defendants removed the case to this Court based on the federal question doctrine. This Court can hear the state-law claims by virtue of supplemental jurisdiction.

## II. *Standard of Review*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey.v. Boston Five Cents Sav. Bank,* 54 F.3d 27, 31 (1st Cir.1995) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.*, 133 F.3d 103, 106 (1st Cir.1997). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir.1995). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991).

### III. *The Federal Counts*

#### A. *Count IV: Procedural Due Process Claim*

■ This Court cannot hear a procedural due process claim unless a plaintiff alleges that the state provides no constitutionally-adequate remedy. *See Zinermon v. Burch*, 494 U.S. 113, 125–26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996, 999 (1st Cir.1992); *Roy v. City of Augusta*, 712 F.2d 1517, 1522–23 (1st Cir.1983). A plaintiff must also take advantage of all state process—a doctrine known as exhaustion of state remedies. *See D'Ambra v. City of Providence*, 21 F.Supp.2d 106, 110–11 (D.R.I.1998).

The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort.

*Zinermon*, 494 U.S. at 125–26, 110 S.Ct. 975.

■ By definition, Faerber's procedural due process claim fails because he has not exhausted his state remedies. *This suit is his state remedy.* Counts I–III ask this Court to reverse Newport's decision as arbitrary and capricious. This Court is sitting in the place of a state Superior Court justice because the case was removed. Faerber cannot pursue in a single lawsuit both the appeals process offered to him by the state and a claim that the same process is constitutionally insufficient. A federal court cannot judge the process to know whether it is constitutional until that process has come to an end.

To summarize, Faerber has not exhausted his state process. Until the state has had an opportunity to provide a remedy, Faerber cannot allege that the state provides no constitutionally-adequate remedy. Therefore, the due process claim in Count IV must be dismissed.

#### B. *Count VI: First Amendment Claim*

■ Exhaustion of remedies does not apply to the freedom of speech claim because such a claim is viable as soon as the wrongful action is taken. *See Zinermon*, 494 U.S. at 125, 110 S.Ct. 975; *D'Ambra*, 21 F.Supp.2d at 111.

■ A public employee has a First Amendment right to speak out, as a citizen, on matters of public concern. *See O'Connor v. Steeves*, 994 F.2d 905, 912 (1st Cir.1993); *Providence Firefighters Local 799 v. City of Providence*, 26 F.Supp.2d 350, 356 (D.R.I.1998). The First Circuit recently restated the steps that a district court should take:

First, the court must determine whether [the plaintiff] made her statements as a citizen upon matters of public concern. If the speech involved matters not of public concern, but instead of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Second, the court must weigh the strength of the employee's and the public's First Amendment interests against the government's interest in the efficient performance of the workplace.

Third, if the employee's and the public's First Amendment interests outweigh a legitimate governmental interest in curbing the employee's speech, [the plaintiff] must show that the protected expression was a substantial or motivating factor in an adverse employment action.

*Tang v. Rhode Island,* 163 F.3d 7, 12 (1st Cir.1998) (citations omitted and paragraphs added). *See also O'Connor,* 994 F.2d at 912–13.

Defendants argue that Faerber's claim fails the first prong. They argue that Faerber called the City Council members out of personal interest, because he personally disagreed with the decision to hire someone from private industry.[1] They say that his personal opinion or his concern for friends who worked in the sewer plant does not qualify as an "issue of public concern."

■■■ The First Circuit has established a two-step process to decide whether speech involves an "issue of public concern." To begin, this Court looks at the topic of the speech to decide whether it is

"clearly a legitimate matter of inherent concern to the electorate." *O'Connor,* 994 F.2d at 913–14 (noting that fire chief's commentary on available fire protection was plainly a matter of inherent concern). If the topic was not of inherent concern, then this Court makes a more-detailed analysis into the form and context of the employee's expression as revealed by the whole record. *See id.* at 914 (noting that internal working conditions affecting only the speaker and co-workers would not be a matter of inherent concern). This analysis centers on whether the community has manifested a legitimate concern in the internal workings of the particular agency and, if so, whether the form of the employee's expression suggests a subjective intent to contribute to any such public discourse. *See id.* Using this test, Faerber's calls to the City Council members were clearly about an issue of public concern.

Because this Court does not know exactly what Faerber said during the calls, it cannot decide whether the conversations were of "inherent concern." Certainly the City's hiring policy and the hiring of a major city administrator would be of interest to the citizens of the City, especially when the City Council was about to vote to place an unlicensed person in a job sensitive enough to require a state certificate. However, defendants point to evidence in Faerber's deposition that suggests that he was concerned, at least in part, with grumbles from his friends. A finding on this issue would depend on facts not in evidence because a city's personnel policies are not automatically of "inherent concern" to citizens in the way that fire safety would be.

■■■ The issue, however, is immaterial, because Faerber's actions and speech

---

1. In his Complaint, Faerber also alleges that Newport's undeclared reasons for firing him include his frequently-expressed opinions on unionization of city employees and privatization of its water facilities. (*See* Complaint, at ¶ 54.)

Neither party raised this communication in its memorandum, and this Court believes that the calls to the City Council were sufficient to carry the First Amendment claim past summary judgment.

However, these additional allegations may be fleshed out at trial.

come within the public concern doctrine under the more complete analysis of the circumstances. To emphasize some material facts: Faerber was not applying for the vacant job. He had no personal stake in the selection. The City Council was voting on whether to hire a person without the previously-required certificate, and it was acting after failing to advertise the higher pay rate. Faerber objected to the procedure and thought the Council would be violating its own hiring ordinance. And, most importantly, Faerber voiced his opinion to democratically-elected city leaders concerning a public vote that was scheduled to be taken the next day.

This case is about a city employee who called city council members to discuss a proposed hiring that touched both on the city's hiring procedures and state licensing requirements. He had no personal stake, and he was speaking to the elected representatives of the public. Lobbying elected members of the government, to be plain, is precisely the kind of communication that the First Amendment was written to protect. The citizens of Newport have a legitimate interest in the City's hiring of new administrators, and Faerber was lobbying politicians to get them to change their minds—a basic form of contribution to public discourse.

This Court notes that Faerber was not complaining about how his employer was treating him. *Cf. Tang*, 163 F.3d at 12–13 (employee complaining about her personal situation). Faerber did not complain by posting his opinion on a bulletin board. *Cf. Alinovi v. Worcester School Committee*, 777 F.2d 776, 786–77 (1st Cir.1985) (teacher posted her own disciplinary letter on Parents' Night). Faerber expressed his views directly to elected City Council members. They were free to ignore Faerber's lobbying, but the City Manager could not fire him because of it without proving that the City had some outweighing interest to protect.

Of course, whether Faerber was fired because of his speech is a disputed issue.

Faerber still must satisfy both the second and third prongs of the test outlined in *Tang* at trial. Defendants' motion for summary judgment is denied as to Count VI.

## C. *Count VII: Equal Protection Claims*

■■■ Defendants admit that plaintiff may prove an equal protection violation by demonstrating disparate treatment and supplying evidence of malicious or bad faith intent to injure. *See Yerardi's Moody Street Restaurant & Lounge, Inc. v. Town of Randolph*, 932 F.2d 89, 92 (1st Cir.1991) [*hereinafter Yerardi's III*]. The First Circuit emphasized that this is a two-part test and that evidence of the malicious or bad faith intent to injure cannot be inferred from the disparate treatment. *See id.* at 92–94. The plaintiff must offer independent evidence of malice, not merely disprove the rationale for the decision offered by the defendants. *See id.*

■■ This is a lofty bar to cross, but defendants make no showing that Faerber will fail. At oral arguments, defendants' counsel stated that equal protection claims can only be brought by members of protected groups. Yet, *Yerardi's III* and defendants' own memorandum in support of this motion explain why that is not so. In the memorandum, defendants note that these "bad faith" cases are rare. Yet, novelty is certainly not grounds for summary judgment.

■■ In fact, the flaw in Faerber's claim is far more fundamental. Faerber cannot win an equal protection claim because he has not alleged facts that support the "different treatment" portion of his claim. In his Complaint, Faerber alleges that:

the defendants have treated him differently from other similarly situated City employees on the basis of the content and purpose of his communication.

(Complaint, at ¶ 59.) Yet in the same Complaint, Faerber alleges that another city employee telephoned a City Council

member the same night as Faerber to express the same concerns about the imminent hiring. That employee was not fired. (*See* Complaint, at ¶ 57–58.)

Even assuming that defendants treated Faerber differently, the Complaint establishes that the different treatment was not based on the "content and purpose of his communication." The communication is what makes Faerber *similar* to the other employee, not different. This is the same as if Faerber claimed to have been fired based on his gender and then offered evidence that another male employee was not fired. To sustain the equal protection claim alleged in the Complaint, Faerber would have had to allege that there was an employee who was similar to him *except for the communication that the Complaint alleges was the key to the disparate treatment.* He has not. This failure would be evident on a motion to dismiss, so it is certainly dispositive on a motion for summary judgment.

In essence, Faerber claims that he was singled out because he spoke out. That sets forth a First Amendment claim, but it fails under the equal protection clause. Defendants' motion for summary judgment on Count VII is granted.

D. *Count VIII: Substantive Due Process Claim*

■ Defendants are correct that this kind of injury would never qualify for substantive due process protection. To sustain a suit based on a substantive due process violation, a plaintiff must allege facts that show:

(1) that a specific liberty or property interest protected by the federal due process clause has been violated; or

(2) that the state's behavior shocks the conscience.

*See Coyne v. City of Somerville,* 972 F.2d 440, 443 (1st Cir.1992).

As to the first possibility, the First Circuit has adopted the reasoning that "the substantive Due Process Clause affords only to those interests 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Coyne v. City of Somerville,* 770 F.Supp. 740, 747 (D.Mass.1991) (quoting *Michael H. v. Gerald D.,* 491 U.S. 110, 122, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989)) (adopted by the First Circuit at *Coyne,* 972 F.2d at 443–44). In the trial court opinion cited by the First Circuit, Magistrate Judge Lawrence B. Cohen noted that substantive due process covers matters such as procreation, marriage and family life. *See Coyne,* 770 F.Supp. at 748. Both Judge Cohen and the First Circuit panel agreed that the right to a promotion was not the sort of property right to which the Constitution attaches. *See Coyne,* 972 F.2d at 443–44; *Coyne,* 770 F.Supp. at 748.

■ Similarly, the right not to be fired without certain procedures is not a fundamental right that raises issues of substantive due process. Faerber's firing may raise procedural due process concerns where the state has mandated a termination process, *see Coyne,* 770 F.Supp. at 748 (noting the difference), but it does not reach the higher threshold of a fundamental right.

■ As to "shocks the conscience," the First Circuit is clear that violations of state law—even where arbitrary, capricious or undertaken in bad faith—do not, without more, give rise to a denial of substantive due process under the federal Constitution. *See Coyne,* 972 F.2d at 444. Faerber has not alleged anything that would "shock the conscience" under First Circuit precedent. He claims that he was fired in violation of Newport's ordinances. The First Circuit was not shocked that the City of Somerville may have hired uncertified teachers contrary to state law in *Coyne.* Violating hiring regulations does not rise to the level of substantive due process. Certainly, Faerber's allegation is no more robust. Therefore, defendants' motion for summary judgment on Count VIII is granted.

## IV. The State Counts

### A. Counts I, II, III: Reviewing the City's Action

Defendants argue that plaintiff's appeal is still pending before the Appeals Board and that this case thus is not ripe. The issue is whether this Court may hear the case while the appeal is still pending. This Court rules that there are disputed facts that preclude summary judgment at this time. However, the issue does not control at this point because this Court chooses to sever all the state counts in order to try the First Amendment claim.

### 1. The Law of Ripeness

■■■■ Generally, this Court lacks jurisdiction over cases that are not "ripe" because the Constitution seeks to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 535 (1st Cir.1995). For the most part, a plaintiff's claim concerning a prospective action, such as the Appeals Board's possible rejection of his appeal, would lack ripeness because "the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *Riva v. Massachusetts,* 61 F.3d 1003, 1009 (1st Cir.1995) (outlining test for ripeness).

■■■ However, Faerber cannot be required to undergo some sham process, and there is a factual dispute about whether the Appeals Board existed to hear an administrative appeal of the City Manager's decision to fire Faerber. Newport ordinances provided that Faerber could appeal to the Appeals Board, but Newport did not have an active Appeals Board when Faerber was fired. This Court does not know whether the Appeals Board presents a legitimate opportunity to have someone review the firing decision or merely a Potemkin village that Newport erected to forestall judicial scrutiny. That decision would depend on facts such as when the Board was reconstituted, what kind of hearing it held and why it has not ruled for 18 months after the firing. Because this Court must draw all inferences in favor of the non-moving party, defendants cannot prove that the Appeals Board proceeding is an actual appeal that would make judicial review unavailable at this point.

### 2. All state-law counts will be severed

The ripeness issue is not crucial at this point because this Court chooses to sever the state-law claims and try the First Amendment count first.

■■■■ This Court may sever counts into separate trials "in the furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b). Rule 42(b) places this decision soundly within this Court's discretion. *See Gonzalez–Marin v. Equitable Life Assurance Society*, 845 F.2d 1140, 1145 (1st Cir.1988). *See also Lieberman–Sack v. Harvard Community Health Plan of New England, Inc.*, 882 F.Supp. 249, 257 (D.R.I.1995) (applying the rule).

■■■ Faerber's First Amendment claim is clear, and it is certainly ripe. Although the facts necessary to prove the federal and state counts overlap, they are not a perfect match, and trying the state-law claims concurrently would introduce delay and inefficiency that may impede the execution of justice. Faerber should muster his facts in support of his First Amendment claim. If he is successful, the remedies available to him may make the state-law claims moot. If he is unsuccessful, then the state-law claims can be heard by this Court or returned to the Superior Court for trial. Certainly by then, the Personnel Appeals Board should have rendered its decision and thus caused the ripeness issue to become moot.

**B.** *Counts V & IX: Whistleblower's Protection Act and State Constitution*

For the reasons outlined above, this Court severs and stays both the state statutory and constitutional claims until after it has heard the federal First Amendment claim.

## CONCLUSION

This Court believes Faerber has offered sufficient evidence to survive summary judgment on the First Amendment count. This count incorporates the grist of Faerber's allegations and offers remedies that would make him, for the most part, whole. Faerber has been out of work for 18 months. It is in the interest of both sides to put the issue to trial. No one prospers by complicating the case with state-law claims that may be procedurally flawed or may duplicate the First Amendment claim.

Therefore, this Court grants summary judgment to defendants on Counts IV, VII, and VIII. It denies summary judgment on all other counts, but it severs Count VI from the state-law claims in order to expedite a trial on that First Amendment claim. The state-law claims will be put on the back burner and be resolved at a later time if necessary.

It is so Ordered.