

Opinions of the United
States Court of Appeals
for the Third Circuit

10-21-2004

# Martin v. Port Auth Alghny

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3252

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Martin v. Port Auth Alghny" (2004). *2004 Decisions.* Paper 200.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/200

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 03-3252

BOBBY MARTIN,

Appellant

v.

PORT AUTHORITY TRANSIT OF
ALLEGHENY COUNTY

Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 00-cv-02440)
District Court: Hon. Ila Jeanne Sensenich, Magistrate

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 13, 2004

Before: Nygaard, McKee, and Chertoff, Circuit Judges.

(Filed: October 21, 2004)

OPINION

McKEE, Circuit Judge.

    Bobby Martin, an African-American male who was terminated from his

employment with the Port Authority Transit of Allegheny County, appeals from the jury's

verdict in favor of his employer in the action he brought under Title VII charging racial

discrimination. He argues the magistrate judge erred in excluding evidence of a poster

his supervisor had in her office as well as statements that supervisor made which

purportedly established her racial bias. For the reasons discussed below, we will affirm.

**I**

Since we write only for the parties, it is not necessary to recite the facts of this case except insofar as may be helpful to our brief discussion.

Martin first argues that the court erred in excluding certain statements of Deborah Cooper. Cooper, a white female, became Martin's supervisor after moving to Pittsburgh from Orlando, Florida, to work for the Port Authority. On several occasions, Cooper made comments about her move from the South, stating: "I told my father that I was moving to Pittsburgh, and my father said, 'I have been waiting 79 years to get even with the damn Yankees and this ought to just about do it'" (hereafter referred to as the "Yankee comment").

Martin's second evidentiary challenge addresses a poster in Cooper's office. After she began working at the Port Authority, Cooper hung a poster that featured a photograph of a sculpture titled, "Defiance." It depicted an African-American female slave, standing erect, with scars on her back. Cooper had purchased the artwork at an Urban League function in Orlando. After displaying the poster, Cooper discovered several hundred copies of an anonymous letter in the stairwell of her office building. The letters made reference to the poster and described Cooper as "a racist." Cooper's supervisor initially met with her to request that she take the poster down. However, after discussing the matter with Cooper, he changed his mind and told her that she did not need to remove it. Ultimately, Cooper did take the poster down on her own.

Martin had a history of tardiness and attendance problems. He had received poor job evaluations that included a written reprimand. Martin's supervisors met with him prior to his termination to discuss his job performance, but he was eventually dismissed after an incident on March 2, 1999. Martin thereafter brought this action in the Western District of Pennsylvania, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* The Port Authority thereafter filed a motion for summary judgment which was denied by the magistrate judge. The magistrate judge based her decision on the two pieces of evidence that form the crux of Martin's appeal: the poster and the Yankee comment.

In denying the motion for summary judgment, the magistrate judge commented that both pieces of evidence were ambiguous but could suggest Cooper was biased against African-Americans. However, prior to trial, the Port Authority filed a motion *in limine* to exclude evidence of the poster and the Yankee comment. The magistrate judge initially granted the motion with respect to the comment, but ruled that evidence of the poster was admissible. On the first day of trial, the judge reversed herself and ruled that the poster was also inadmissible. After a two day trial, the jury returned a verdict in favor of the Port Authority, and Martin filed this appeal.

## II

### A. Evidentiary Rulings

Unless otherwise precluded, "[a]ll relevant evidence is admissible ." Fed. R. Evid.

402.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Conversely, irrelevant evidence is not admissible.  Fed. R. Evid. 402.  We review evidentiary rulings for abuse of discretion. *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994).

Martin argues that the magistrate judge abused her discretion when she determined that the "Yankee" comment was not probative of racial discrimination.  Martin cites *Robinson v. Runyon*, 149 F.3d 507 (6th Cir. 1998), for the proposition that evidence of a discriminatory atmosphere at a plaintiff's place of employment is relevant to establishing racial animus in a discriminatory-termination case.  Appellant's Br. at 24-5.  In *Robinson*, a Postal Service employee, who alleged that she was treated differently because of her race and that the Postal Service condoned a racially hostile atmosphere, sought to introduce evidence of a fake employment application containing crude racial stereotypes that had repeatedly circulated throughout her office.  *Robinson*, 149 F.3d.  Appellant's Br. at 511.  The district court excluded the evidence.  *Id.*  On appeal, the Court of Appeals for the Sixth Circuit reversed because the racist employment application, which circulated to employees without condemnation or rebuke, made the existence of racially motivated actions by the employee's supervisors more probable.  *Id.* at 512.

*Robinson* is clearly distinguishable from this case.  *Robinson* involved a claim of a hostile work environment.  Martin raises no such claim.  In addition, unlike the fake postal service application at issue there, Cooper's Yankee comment did not contain any

derogatory racial epithets; in fact, Cooper did not even mention race. We realize that one could arguably infer racial animus from the sectional antagonism arguably evidenced by the remark. However, that would suggest something about Cooper's father, not Cooper.

Martin also cites our decision in *Abrams v. Lightolier Inc.*, 50 F.3d 1204 (3d Cir. 1995), to support his assertion that the magistrate judge abused her discretion when she precluded evidence of Cooper's Yankee comment. In *Abrams*, an employee claimed that he was terminated based on his age. In assessing his claim, the district court had permitted evidence of two instances in which a supervisor had referred to older plant employees as "old fogies" and "dinosaurs." *Id.* On appeal, we held that the age-related comments were probative of the supervisor's attitude toward older workers. *Id.* at 1214-15. However, Cooper was simply repeating a rather oblique comment of her father. The comments made by the supervisor in *Abrams* were related directly to age, and the supervisor had been accused of harboring a discriminatory attitude towards older workers.

Martin also suggests that the Yankee comment is relevant because it tends to demonstrate that Cooper condoned her father's notion that the South should have been permitted to keep slaves without interference from the North. However, Cooper's comment is far more ambiguous than Martin admits. It does not contain any reference to slaves, nor does it contain any disparaging references to African-Americans. Moreover, as we have just noted, the statement is not probative of Cooper's own views. Therefore, the magistrate judge did not abuse her discretion in refusing to admit evidence of the Yankee comment.

The Port Authority also argued that the poster was not probative of any racial discrimination on the part of Cooper. As noted above, initially, the magistrate judge denied the motion *in limine* stating that while the effect of the artwork was ambiguous, Cooper's objections to removing the poster after being advised that the poster was offensive to African-Americans could suggest insensitivity to the feelings of African-Americans under her supervision and could therefore constitute evidence of bias toward African-Americans. However, after reviewing Cooper's deposition testimony, the magistrate judge rescinded her order and decided to grant the Port Authority's motion *in limine* because evidence of the poster was not probative of racial discrimination.

Martin asserts that the poster demonstrates Cooper's lack of sensitivity to the feelings of African-Americans, and could also establish that Cooper condoned the physical abuse of African-Americans. Martin also argues that the poster is relevant because Cooper did not take it down after she read the anonymous complaint describing her as a racist and because she did not acquiesce to her supervisor's initial request to remove it. However, the sculptor whose work is depicted in the poster explained that it portrays "a beautiful young woman trying desperately to hold on to her dignity. . . . She stands erect, not bowed. The expression on her face is resolve . . . the scars on her back testify to her spirit." App. 87. The artist describes the work as an expression of anger at the institution of slavery, and that is consistent with the fact that Cooper purchased it from the Urban League. We realize that "beauty resides in the eyes of the beholder." Moreover, Aesop reminds us that "one man's meat is another man's poison." Therefore,

we recognize that not everyone will view the poster in the same way or attach the same significance to it that the sculptor did. That does not, however, mean that it reflects Cooper's insensitivity or racism. The magistrate judge properly exercised her discretion in heading off a debate about a work of art that doesn't appear very probative of the point Martin seeks to wrench from it. There is nothing in the record to suggest that Cooper condoned the physical abuse of African-Americans, or that the poster suggests that she does.

Martin's attempt to use Cooper's meeting with her supervisor to paint the poster and Cooper as racist is also unavailing. At the outset of that meeting, Cooper's supervisor did request that Cooper remove the poster because of the anonymous letter that had surfaced in the office in response to it, and Cooper stated that she would not take it down. However, during that conversation the supervisor changed his mind, and ultimately agreed that Cooper would not have to remove the poster. Thus, Cooper was not acting in defiance of her supervisors in allowing the poster to remain. The magistrate judge concluded that neither the poster nor the fact that Cooper had hung it in her office was probative of racial bias. Based on this record, that was not an abuse of discretion.

**C. The "Law of the Case" doctrine**

Finally, Martin contends that the magistrate judge erred because she failed to follow the "law of the case" doctrine. The "law of the case" doctrine has developed to maintain consistency and avoid reconsideration of matters once decided during the course of a lawsuit. *Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*, 123

F.3d 111, 116 (3d. Cir. 1997).  The doctrine is intended to promote finality and judicial economy.  *Id.*

Martin argues that when the magistrate judge denied a defense motion for summary judgment, she stated that the evidence of the poster and the Yankee comment, while ambiguous, could be considered by a jury as evidence that Cooper had a discriminatory reason for firing Martin.  Martin contends that when the magistrate judge subsequently granted the Port Authority's motion *in limine*, she therefore violated the law of the case doctrine.

Martin's reliance on the law of the case doctrine is not only misplaced, it approaches frivolity.  The doctrine does not preclude all reconsideration of an issue, nor prevent a trial court from reconsidering the relevance or admissibility of evidence as a law suit proceeds or a trial unfolds.  *Tang v. State of R.I., Dep't. of Elderly Affairs*, 163 F.3d 7, 11 (1st Cir. 1998).  Interlocutory orders remain open to reconsideration and do not constitute the law of the case.  *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994).  The pre-trial rulings of a trial court may be reconsidered not only during pre-trial proceedings, but even after trial.  18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478.1 (2d ed. 2002).  Thus, the law of the case doctrine is inapplicable to the magistrate judge's pre-trial evidentiary ruling.

### III

For the reasons stated above, we will affirm the district court.